IN THE U.S. DISTRICT IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMERICAN TRADITIONS INSURANCE
COMPANY, as subrogee of Charles
Channell and Norma Channell**

   **Plaintiff,**       **Case No: 6:12-cv-1639-Orl-19TBS**

**v.**

**WHIRLPOOL CORPORATION, a
Delaware corporation, EMERSON
ELECTRIC COMPANY, a Missouri
corporation, and THERM-O-DISC, INC.,
an Ohio Corporation,**

   **Defendants.**
_____

**DEFENDANT. THERM-O-DISC'S MOTION TO STRIKE
CERTAIN PORTIONS OF THE EXPERT REPORT AND LIMIT THE TESTIMONY
OF PLAINTIFF'S EXPERT JACK SANDERSON
AND INCORPORATED MEMORANDUM IN SUPPORT**

   **NOW INTO COURT,** through undersigned counsel and pursuant to Federal Rules of

Civil Procedure 26(a)(2)(b) and 37(c)(1), comes Defendant Therm-O-Disc, Inc. who

respectfully moves this Honorable Court for an Order striking certain portions of the expert

report, and limiting the expert testimony, of plaintiff's retained liability expert, Jack

Sanderson. Rule 26 mandates that a party produce an expert report that contains a complete

statement of all opinions an expert witness will express and the basis and reasons for such

opinions. In this case, plaintiff, American Traditions Insurance Company, retained Mr. Jack

Sanderson, whose expert report fails to meet these minimal requirements of federal law.

Rather, Mr. Sanderson's report offers only unsupported "conclusions" including the *res ipsa*

*loquitor*-like speculative and conclusory statement that "the operating thermostat had to be

defective for the fire to occur." Mr. Sanderson's report fails to satisfy the Rule 26 report requirements as it does not provide any specific information regarding the alleged defect in, and/or the failure mode of, the product at issue. Accordingly, any and all portions of Mr. Sanderson's expert report that discuss any alleged failure or defect in the product at issue should be stricken and Mr. Sanderson's testimony should be limited accordingly pursuant to Rule 37(c)(1).

**FACTUAL BACKGROUND**

**A.      The Subject Incident and the Product at Issue**

This matter arises from a December 2, 2008, residential fire at the home of Charles and Norma Channell in Zellwood, Florida.   According to testimony provided by Ms. Channell, on the day of the incident she washed a load of clothes that she intended to place into the dryer.  Prior to doing so, she remembered that her son had washed clothes the night before and reported that the dryer made a loud noise when it went off. See deposition of Norma Channell, pp. 19-20, attached as Exhibit A.  Ms. Channell, in an attempt to test the operation of the dryer, pushed the "on" button on the dryer and heard the dryer going "boom, boom, boom" so she turned the dryer off and unplugged it from its electrical outlet. *Id.* at 20, 38-39, 74. Approximately five minutes later and while in another room of the home attempting to contact Maytag repair, Ms. Channell allegedly heard another noise from the utility room and looked back for only a few seconds to see fire coming from underneath the dryer before contacting fire responders. *Id.* at 41-42, 44.

**B.      The Subject Dryer and Operating Thermostat**

The subject electric clothes dryer was manufactured by Maytag (which was

2

subsequently acquired by Whirlpool Corporation) and incorporated, as a component part, an operating thermostat (a Type 69T13) manufactured by Therm-O-Disc.  The subject clothes dryer was approximately five years old at the time of the fire.  *Id.* at 9-10, 28. The operating thermostat was manufactured by Therm-O-Disc during the 43rd week of 2002.  During their five years of ownership and use of the subject dryer, the Channells did not have any problems with the dryer. *Id.* at 19, 28-29.

C.      **The Expert Report of Jack Sanderson**

More than three years after the subject incident, and almost a year before this lawsuit was initiated, plaintiff, American Traditions Insurance Company, retained Jack Sanderson of Fire Findings Investigation to conduct a fire cause and origin investigation.[1] Upon being retained in this case, Mr. Sanderson did nothing more than (1) review the reports previously issued, and photographs taken, by plaintiff's original cause and origin investigators, (2) review the Fire Incident Report prepared by the local first responders and (3) inspect the subject dryer at his facility.[2]

Based upon his inspection of the dryer and review of above items, Sanderson issued a report on March 6, 2012. See the March 6, 2012 expert report of Jack Sanderson attached as Exhibit C.  Mr. Sanderson's report provides the following "Conclusions:"

---

[1]      Plaintiff initially retained the services of Frank Hutton and David Kessinger of HSA Engineers & Scientists to conduct a cause and origin investigation of the subject fire.  Mr. Hutton and Mr. Kessinger concluded that the fire was caused as a "result of an unspecified mechanical malfunction to the electric motor of the clothes dryer." See the January 21, 2009 report attached as Exhibit B.  Plaintiff did not exchange a Rule 26 disclosure for the HSA engineers and has chosen instead to rely upon Mr. Sanderson as its testifying cause and origin expert. See Plaintiff's June 18, 2013 First Designation of Expert Witnesses.

[2]      Mr. Sanderson's first inspection of the subject dryer occurred more three years after the subject incident and after the dryer had been disassembled during prior inspections

1.    I found obvious evidence of a failure of the operating thermostat for the dryer.

2.    It is my opinion arcing caused by a failure of the thermostat caused the fire.

3.    It is my further opinion the dryer and, specifically, its operating thermostat had to be defective for the fire to occur. *Id.*

Mr. Sanderson's March 2012 report does not provide any additional information regarding the alleged "failure" of the operating thermostat or identify the specific nature of the alleged "failure."   There is no information provided in the report regarding what the alleged "failure" was or what caused the alleged "failure."   Mr. Sanderson's report also does not provide any explanation as to how or why the alleged and unspecified "failure" caused arcing that he believes lead to the subject fire.

Furthermore, Mr. Sanderson's report is completely silent as to any discussion of the specific defect from which the operating thermostat allegedly suffered.   Mr. Sanderson does not state whether the defect is one based on the design of the subject dryer and/or operating thermostat or one that resulted during the product's manufacture.   In fact, there is no indication in the report that Mr. Sanderson did anything to evaluate the design and/or manufacture of the subject dryer/thermostat before reaching his "Conclusions." Mr. Sanderson further offers no explanation as to how or why the allegedly defective subject dryer/thermostat operated without problem/issue for more than five years before the subject incident.

Nonetheless, Mr. Sanderson's report goes on to state that he "has seen this type of failure of an operating thermostat previously." *Id.* Once again, Mr. Sanderson provides

4

absolutely no support for this statement. Mr. Sanderson does not provide any information regarding such prior instances in which he has purportedly seen this unidentified and unspecified "failure." Mr. Sanderson's report does not state that such prior failures caused fires. Mr. Sanderson does not even state that the alleged prior "failures" he has seen were of operating thermostats of the same type as the subject 69T or even involved thermostats manufactured by Therm-O-Disc.

Ultimately, Mr. Sanderson's report provides the following:

"It is my opinion the failure of the operating thermostat blew out molted steel particles that ignited nearby lint and/or plastic components of the blower housing, initiating the fire. For that to happen, the dryer and, specifically, its operating thermostat had to be defective." *Id.*

This amounts to nothing more than Mr. Sanderson's *ipse dixit* and a *res ipsa loquitor*-like theory as his report provides no information regarding how he reached the conclusion that the "thermostat had to be defective" nor does he actually identify the alleged failure mode and/or defect from which he believes the subject thermostat suffered.

**D.    The Subject Litigation**

Approximately eight months after Mr. Sanderson issued his report, American Traditions Insurance Company, as subrogee for Charles and Norma Channell, initiated this lawsuit against Defendants, Whirlpool Corporation, Emerson Electric Co. and Therm-O-Disc, alleging strict products liability and negligence causes of action. More specifically, plaintiff asserts that the residential fire was caused by the allegedly defective Whirlpool manufactured dryer that incorporated, as a component part, an allegedly defective Therm-O-Disc manufactured operating thermostat. In effect, the plaintiff's complaint is nothing more

than a restatement of Mr. Sanderson's report.

From the outset of this litigation, defendants, and specifically Therm-O-Disc, have sought information and documentation from the plaintiff regarding the alleged failure mode and/or defect in the subject dryer/thermostat. See Therm-O-Disc's January 23, 2013 First Set of Interrogatories and Requests for Production of Documents and specifically Interrogatory Nos. 6, 7, 8, 9, 12, 15 and Requests for Production Nos. 12, 13, 14, 15, 16, 19, 24 attached as Exhibit D. In response, plaintiff did not provide any specific information regarding the alleged failure mode of the dryer/thermostat or the nature of the alleged defect on the grounds that such discovery requests sought the premature disclosure of expert information. See Plaintiffs March 28, 2013 discovery responses attached as Exhibit E and F.[3]

Pursuant to this Court's January 29, 2013, Case Management and Scheduling Order (Rec. Doc. 34), Plaintiff was required to make its disclosure of experts on June 3, 2013.  On June 18, 2013 plaintiff transmitted, via email, its First Designation of Expert Witnesses, a copy of which is attached as Exhibit G, along with a copy of Mr. Sanderson's original March 2012 report.[4] The substance and content of Mr. Sanderson's report, as produced in

---

[3]     Therm-O-Disc also propounded a Second Set of Request for Production of Documents on May 7, 2013, seeking any and all documentation (including photographs, reports, notes and/or other documentation) supporting Mr. Sanderson's original claim in his March 2012 report that he had "seen this type of failure of an operating thermostat previously." To date, plaintiff  has not responded to the outstanding discovery and more importantly produced any documentation to support Mr. Sanderson's assertion.

[4]     Although the plaintiff's expert designation was not timely pursuant to the Court's Case Management and Scheduling Order, Therm-O-Disc does not seek to strike Mr. Sanderson's report on such grounds as it is undisputed that plaintiff transmitted a copy of Mr. Sanderson's March 2012 report to the Therm-O-Disc during the pre-litigation/claims stage of this matter in an attempt to resolve/settle this dispute without formally filing suit.

conjunction with plaintiff's First Designation of Expert Witness, is unchanged from when he originally authored it in March 2012.  Therefore, it is evident that Mr. Sanderson has done nothing in further support and/or evaluation of his "Conclusions" since the plaintiff filed suit. More specifically, it is apparent that during the pendency of this litigation, Mr. Sanderson has done nothing, including conduct any testing, to investigate the design and/or manufacture of the subject dryer/thermostat.  This is not surprising given the fact that, since filing suit, plaintiff has not sought discovery from defendants of any information regarding the design and/or manufacture of the dryer/thermostat, including any testing documents from the defendants or even design drawings for the subject dryer/thermostat.  Furthermore, Mr. Sanderson has not even spoken to Ms. Channell or reviewed her deposition testimony provided in this litigation since his report continues to rely upon Ms. Channell's alleged statement that she  "adjusted the temperature setting after first trying to start the dryer" - - a fact expressly denied by Ms. Channell during her deposition.  See Sanderson report, p. 4, Ex. C; Channell depo, p. 38, Ex. A.

 As discussed below, Rule 26 requires that an expert report/disclosure contain a full and complete statement of all of the retained expert's opinions and an explanation of the bases/reasons for such opinions.  In the present case, plaintiff has produced an expert report from Mr. Sanderson in which he asserts various opinions regarding an unidentified, unspecified and unknown defect in, and/or failure mode of, the subject dryer/thermostat. However, Mr. Sanderson's report doesn't even attempt to provide any specific information as to the nature of the failure/defect and/or how Mr. Sanderson reached such conclusions without having conducted any evaluation whatsoever of the design/manufacture of the

subject dryer/thermostat. In effect, plaintiff is attempting to bootstrap Mr. Sanderson's expert opinions regarding the design/manufacture of the subject dryer/thermostat onto his cause and origin investigation of the subject fire.[5]

As a result, the plaintiff's expert disclosure fails to satisfy the Rule 26 requirements and any and all portions of Mr. Sanderson's March 2012 report regarding any alleged defect and or failure of the dryer/thermostat should be stricken and his expert testimony in this case similarly limited.

## LAW AND ARGUMENT

**A.     The Requirements of the Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." The disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involves giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). The report must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* The disclosures must be made "at the times and in the sequence that the court orders," and the parties must supplement the disclosures

---

[5]      For purposes of this motion only, Therm-O-Disc does not seek to strike those portions of Mr. Sanderson's report and/or limit his testimony regarding his inspection of the subject dryer in conjunction with his fire cause and origin investigation.  However, Mr. Sanderson is not an engineer and the plaintiff's expert disclosure is devoid of any indication that Mr. Sanderson has the requisite experience and qualifications to offer any opinions on the design and/or manufacture of the subject operating thermostat.

when required by Rule 26(e). Fed.R.Civ.P. 26(a) (2)(C), (D); *accord* Middle District Discovery (2001) at 9.

"'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written expert report containing 'a complete statement of all opinions' and 'the basis and reasons therefore.'" *Reese v. Herbert,* 527 F.3d 1253, 1265 (11th Cir.2008) (citing Fed.R.Civ.P. 26(a)(2)(B)). "Expert reports must not be sketchy, vague or preliminary in nature and the disclosure must not be used as a means to extend a discovery deadline." *Dyett v. N. Broward Hosp. Dist.,* No. 03–60804–CIV, 2004 WL 5320630 at *1 (S.D.Fla. Jan. 1, 2004); *see also* Fed.R.Civ.P. 26(a)(2) Advisory Comm. Notes (1993). The expert must prepare a "detailed and complete written report stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." *Advisory Committee Notes to 1993 Amendments.*

Compliance with Rule 26 is "'not merely an aspiration'" as "'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise ....'" *Reese,* 527 F.3d at 1266 (quoting *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir.2004), *overruled on other grounds; Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457–58 (2006)). "[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese,* 527 F.3d at 1265. "Additionally, an expert report must be complete 'such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to

shorten or decrease the need for expert depositions and thus to conserve resources.'" *Dyett,* 2004 WL 5320630, at * 1.

In *Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010), the United States 6th Circuit Court of Appeals recently upheld a trial court's grant of a motion to strike an expert report for failure to comply with the Rule 26 requirements. The Appellate Court noted that most troubling of the violations that the district court described in its ruling was the expert's failure, in violation of Rule 26(a)(2)(B)(i), to "give a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* at 271.  The Appellate Court noted that the expert provided only "cursory support" for his conclusions and while the expert did identify various examples of alleged similarities (the case was based on allegations of software copying), the expert "failed to discuss the basis of his conclusion that the alleged similarities were the result of copying."  The Appellate Court expressly held that "[a]fter reading [the expert's] report, [defendant] was only slightly more informed about the basis of [plaintiff's] argument . . . than [defendant] would have been by merely reading [plaintiff's] complaint." *Id.*

> The lack of reasoning describing why any alleged similarities indicated copying, Reid's statement that he could identify other similarities and Reid's failure to tie any alleged similarities between the . . . software . . . together show that the report failed to meet the requirement of the rule. *Id.*

Therm-O-Disc contends that Mr. Sanderson's expert report has similarly failed to satisfy the Rule 26 requirements.

Furthermore, the directives of Rule 26 are "mandatory." *Lohnes v. Level 3 Comm., Inc.,* 272 F.3d 49, 59 (1st Cir. 2001).  A litigator who fails to comply with these requirements

does so at its own peril as Rule 37(c)(1) states that if a party fails to identify an expert witness or provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Determination of whether a violation of Rule 26 is justified or harmless is left to the broad discretion of the trial court.  In this case, plaintiff's expert disclosures, and Mr. Sanderson's expert report, are deficient under Rule 26(a) and should be stricken pursuant to Rule 37(c)(1).

**B.      Plaintiff's Expert Disclosure Fails to Satisfy Rule 26.**

Mr. Sanderson's expert report is deficient and does not satisfy the Rule 26 requirements.  This should not be surprising given the undisputed fact that it was authored by Mr. Sanderson months before this litigation was initiated and therefore, at that time, did not need to comply with Rule 26.   However, pursuant to this Court's Case Management and Scheduling Order, the plaintiff produced Mr. Sanderson's March 2012 report, unchanged, unrevised, and without amendment as part of its expert disclosure.   As a result, Mr. Sanderson's March 2012 report must now be evaluated by this Honorable Court in light of the Rule 26 report requirements.

Pursuant to Rule 26, it is not sufficient that an expert report merely set forth the opinions the expert will offer; it must also describe the reasons and basis for those opinions. Expert reports must include the "how" and "why" the expert reached a particular result, not just his conclusory opinion. *See Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996); *Olmstead, supra*.  In fact, Rule 26 envisions an expert report so detailed that "in many cases the report may eliminate the need for a deposition." *Id.* Nothing could be further from that

standard in this case.  Here, Mr. Sanderson has provided "conclusions" that can be boiled down to: (1) there was some unidentified, unspecified and unknown failure, (2) that unidentified, unspecified and unknown failure somehow caused arcing that lead to a fire and (3) the dryer/thermostat <u>had</u> to be defective for this to occur.

First, Mr. Sanderson's report provides absolutely no information as to the nature of the alleged failure.  Mr. Sanderson does not state how the dryer/thermostat failed, when it failed, how long it failed prior to the subject incident and what was it about Ms. Channell's use of the dryer on the day of the accident that suddenly caused the failure to manifest itself for the first time (since it is undisputed that the Channells had never had any prior problems with the dryer/thermostat during its five year life history).  Similarly, Mr. Sanderson has provided no information about the alleged "similar failures" that he purportedly has seen in the past.

Second, Mr. Sanderson's report provides no information as to how the alleged failure caused arcing that lead to the subject incident.  Mr. Sanderson does not identify how such a failure caused arcing or the specific failure mode of the thermostat that could have initiated an arcing event.  It is unclear what, if anything, Mr. Sanderson has done to evaluate and eliminate other potential causes of the arcing unrelated to the subject thermostat. The mere fact that Mr. Sanderson observed evidence of arcing during his investigation is itself insufficient to establish that some unidentified, unspecified and unknown failure of the thermostat was its cause.

Moreover, Mr. Sanderson's conclusion that the "operating thermostat had to be defective" does not even constitute an expert "opinion" but rather is a *res ipsa loquitor*-like

theory without any factual support.  Mr. Sanderson's expert report does not identify the specific defect in the dryer/thermostat.  It is unclear whether Mr. Sanderson's opinion is that the dryer/thermostat was defective in design or manufacture. Mr. Sanderson's report is certainly silent as to any evaluation/analysis that Mr. Sanderson did on the design and/or manufacture of the subject dryer/thermostat, because there has been none.  Finally, Mr. Sanderson's report provides absolutely no explanation as to how a defect that presumably existed at the time the product left its manufacturer's control more than five years ago, suddenly manifests itself on December 2, 2008.

In responding to this Motion, Plaintiff may assert that Therm-O-Disc will be able to question Mr. Sanderson at his deposition about how he reached his conclusions. Therm-O-Disc requested to take Mr. Sanderson's deposition (something Therm-O-Disc wouldn't need to do had plaintiff's complied with Rule 26), but plaintiff objected to producing Mr. Sanderson until after the deadline for the production of both defendants' and plaintiff's rebuttal expert reports.  Regardless, such an argument would unfairly shift the burden to defendants to first establish how Mr. Sanderson's conclusions were reached before they even can begin to cross-examine him on his conclusions or prepare their own expert's reports in response. Rule 26(a)(2)(B) was intended to avoid just such a result. *See U.S. v. GC Quality Lubricants, Inc.*, 2002 WL 34376587 (M.D. Ga., 2002) (court granted motion to strike expert report where "the most critical requirements of the Rule – the basis and reasons for the expert's opinions and the data or other information considered- [was] totally lacking").

It goes without saying that defendants are unduly prejudiced by the plaintiff's failure to comply with Rule 26's reporting requirements.  To this day, despite seeking such

information through discovery and being entitled to such information through plaintiff's expert disclosure, defendants still have no information as to the specific failure mode and/or defect theory that plaintiffs are pursuing in this litigation.   Moreover, defendants' expert reports are due on August 2, 2013.   Defendants' experts cannot prepare their own expert reports in response when defendants still have no idea what exactly the plaintiff alleges is defective about the subject product.

As noted earlier, an expert report should be detailed and complete so as to "avoid the disclosure of 'sketchy and vague' expert information. *Sierra Club v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). Mr. Sanderson's expert report does nothing more than present sketchy and vague conclusions about some unspecified, unidentified and unknown failure, which he, without any specific basis, asserts resulted from an unspecified, unidentified and unknown defect in the dryer/thermostat.   As a result, the portions of Mr. Sanderson's expert report discussing the alleged failure of, and/or defect in, the subject dryer/thermostat should be stricken and any expert testimony that Mr. Sanderson may ultimately provide in this litigation should be similarly limited.

## CONCLUSION

For the reasons set forth above, Therm-O-Disc requests that this Honorable Court strike those portions of Mr. Sanderson's expert report regarding any discussions of an alleged failure and/or defect in the subject dryer/thermostat, and limit his expert testimony accordingly, for failure to meet the minimum requirements of Rule 26(a)(2).   In addition, Therm-O-Disc requests that the Court grant such other remedial measures as may be appropriate pursuant to Rule 37 of the Federal Rules of Civil Procedure.

14

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

The undersigned hereby certifies that they have conferred in good faith with counsel for the Plaintiff in this action, Jennifer Todesco, and that they have been unable to agree upon the matters set forth in this motion.

Respectfully submitted:

*/s/ Chris Hill*
Christopher T. Hill, Esquire
Florida Bar No.: 0868371
Hill, Rugh, Keller & Main, P.L.
390 N Orange Avenue, Suite 1610
Orlando, FL 32801

and

Francis H. Brown, III  (#16831) PHV
Eugene Terk (#28834) PHV
McGlinchey Stafford PLLC
601 Poydras Street, 12th Floor
New Orleans, LA  70130
Telephone:  (504) 586-1200
Facsimile:  (504) 596-2800

*Counsel for Therm-O-Disc, Inc. and Emerson*

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 15, 2013, I have forwarded a copy of the foregoing pleading to all counsel of record as listed below by electronic mail and U.S. Mail as follows:

Jennifer H. Todesco
Gibson & Sharps
9420 Bunsen Pkwy, Suite 250
Louisville, Kentucky  40220
*Counsel for Plaintiff*

Tracy D. Knox
Barnes & Thornburg LLP
600 1st Source Bank Center
100 North Michigan
South Bend, Indiana 46601-1632

Emmett Peyton Hodges
Cameron, Hodges, Coleman, LaPointe, & Wright, P.A.
111 N Magnolia Ave,
Orlando, FL 32801

__*/s/ Chris Hill* _____