UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMERICAN TRADITIONS INSURANCE
COMPANY, as subrogee of Charles Channell
and Norma Channell,

    Plaintiffs,

v.                                                    Case No.  6:12-cv-1639-Orl-19TBS

WHIRLPOOL CORPORATION, a Delaware
corporation, EMERSON ELECTRIC
COMPANY, a Missouri corporation, and
THERM-O-DISC, INC., an Ohio corporation,

    Defendants.
_____

## ORDER

This case comes before the Court without a hearing on Defendant, Therm-O-Disc's Motion to Strike Certain Portions of the Expert Report and Limit the Testimony of Plaintiff's Expert Jack Sanderson (Doc. 47).  Plaintiff American Traditions Insurance Company has filed a response in opposition (Doc. 49), and Therm-O-Disc has filed a reply in which it requests oral argument (Doc. 53).  The request for oral argument is DENIED.

I.   Background

On December 2, 2008, a clothes dryer owned by Charles and Norma Channell caught fire, resulting in extensive damage to their home.  (Id. ¶¶ 17-18).  The dryer was manufactured by Maytag corporation, which was subsequently acquired by and became a division of Defendant Whirlpool Corporation.  (Doc. 47 p. 2-3).  The dryer used a thermostat manufactured by Therm-O-Disc.  (Id. p. 3).  The Channells made a

claim on their property and casualty insurance policy issued by Plaintiff. (Doc. 1 ¶ 5). Plaintiff paid the claim and instituted this subrogation action against Whirlpool, Therm-O-Disc and its corporate parent, Emerson Electric Company. (Id. ¶ 4, 19-20). The controversy is in this Court based upon diversity jurisdiction. (Id. ¶ 1).

Plaintiff designated Jack Sanderson as a testifying expert. (Doc. 50 p. 2). Mr. Sanderson holds a bachelor of science degreeand is a certified fire investigator. (Id. p. 5). He has been investigating fires since 1972 and claims particular expertise in the investigation of dryers suspected of causing fires. (Id. p. 5). In his written report, Mr. Sanderson states:

> I have seen this type of failure of an operating thermostat previously. The failure, as shown by the damage inside the body of the thermostat, established the failure had to occur within the device and could not have been the result of a fire that started outside it. Once it failed and began to arc to the grounded mounting cup, the molten steel missing from the cup was thrown off.
>
> That portion of the mounting cup is inside the body of the blower housing, an area where some combustible lint is virtually always present. Furthermore, that blower housing itself, except for the remains of the steel front panel, is combustible plastic that will in itself make a substantial fire.
>
> It is my opinion the failure of the operating thermostat blew out molted steel particles that ignited nearby lint and/or the plastic components of the blower housing, initiating the fire. For that to happen, the dryer and, specifically, its operating thermostat had to be defective.

(Doc. 50-1 p. 5). Based upon these and other observations and opinions, Mr. Sanderson has concluded that:

> 1. I found obvious evidence of a failure of the operating thermostat for the dryer.

-2-

>    2. It is my opinion arcing caused by a failure of the thermostat caused the fire.
>
>    3. It is my further opinion the dryer and, specifically, its operating thermostat had to be defective for the fire to occur.

(Id. p. 3).

Therm-O-Disc argues that the parts of Mr. Sanderson's report which discuss an alleged failure or defect in the thermostat should be stricken and he should be precluded from testifying about those matters, because his report does not satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2). (Doc. 47). Plaintiff counters that based upon the holding in Cassisi v. Maytag Co., 396 So.2d 1140, 1148 (Fla. 1st DCA 1981), Mr. Sanderson's opinions are sufficient to prove its claim. Therm-O-Disc believes Cassisi is irrelevant and should play no role in the Court's determination whether Sanderson's report complies with Rule 26.

II. Legal Standards

   A. Federal Rule of Civil Procedure 26

Under Rule 26(a)(2), a party must disclose to the other parties the identity of any witness it may use at trial. If the witness is retained to provide expert testimony, an expert report must accompany the disclosure. The report must contain: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications; (5) a list of all other cases from the previous four years in which the witness testified as an expert at trial or by deposition; and (6) a statement of the

compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(A) and (B). This provision was added to Rule 26 as part of the 1993 amendments to the rule. The Committee Note explains that "[t]his paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." 1993 Comm. Note, para. (2).

The object of an expert witness report is to convey the substance of the expert's opinion (along with the other required background information) so that the opponent will be ready and able to cross-examine the expert, rebut his testimony, and offer a competing expert if necessary. Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009). An expert witness' report "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." Cohlmia, M.D. v. Ardent Health Services, LLC, 254 F.R.D. 426, 430 (N.D.Ok. 2008). An expert's report "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 271, FN 6 (6th Cir. 2010) (quoting Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998)). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." Cohlmia, M.D. v. Ardent Health Services, LLC, 254 F.R.D. 426, 430 (N.D.Ok. 2008) (quoting Reed v. Binder, 165 F.R.D. 424, 429

(D.N.J. 1996)).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, . . . compliance with the requirements of Rule 26 is not merely aspirational." Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), overruled on other grounds by Ash v.Tyson Foods, Inc., 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." In addition, after motion and an opportunity to be heard, the Court can order the payment of reasonable legal expenses caused by the failure; inform the jury of the party's failure; and impose other sanctions including those listed in Rule 37(b)(2)(A)(i-vi).

      B.      Florida Law and the Cassisi Inference

Under Florida law, in a strict product liability action the plaintiff must prove that: (1) a product; (2) produced by a manufacturer; (3) was defective or created an unreasonably dangerous condition; (4) that proximately caused; (5) injury. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (citing Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551, 553 (Fla. 1986)). An inference that the product was defective arises when the product malfunctions during normal operation. Cassisi v. Maytag Co., 396 So.2d at 1148.

-5-

In Cassisi, a homeowner sued Maytag Company alleging that a dryer it manufactured was defective and caused a fire in her home. Id. at 1143. Her expert witness, a professional engineer, was unable to pinpoint a specific defect within the dryer because it was badly damaged, but it was his opinion that the fire had begun inside the dryer. Id. He surmised that the malfunction was caused by an electrical short in the dryer, but he could not negate other possible causes of the fire. Id. After reviewing applicable case law, the court adopted the reasoning in Greco v. Buciconi Engineering Co., 283 F. Supp. 978 (W.D. Pa. 1967), which holds that when a product malfunctions during normal operation a legal inference arises and the injured plaintiff thereby establishes a prima facie case for the jury's consideration. Id. at 1148. The appeals court noted that "[c]ases applying the . . . inference frequently involve evidentiary facts comprising both an expert's inspection of the product as well as proof of its malfunction, coupled with evidence of normal use." Id. at 1151. Applying this inference to the facts in Cassisi, the court of appeals held that it was "immaterial that the plaintiffs failed to identify the specific cause of the malfunction since it is inferred that the malfunction itself, under such circumstances, is evidence of the product's defective condition at both the time of the injury and at the time of the sale." Id. at 1153. The Eleventh Circuit has explained that Cassisi stands "for the proposition that when a product malfunctions that would not malfunction but for the defect, a plaintiff is entitled to an inference of a defect." Worsham v. A.H. Robins Co., 734 F.2d 676, 683 (11th Cir. 1984). The Cassisi inference can be applied to cases in which the product is lost or destroyed, and in such cases "absolute positive proof of product malfunction

is not necessary . . . ." McCorvey, 298 F.3d at 1259 (quoting Worsham, 734 F.2d at 683).

III.   Analysis

Therm-O-Disc argues that: (1) Mr. Sanderson's report does not provide any information regarding the alleged "failure" of the operating thermostat or identify the specific nature of the alleged "failure"; (2) the report does not provide any explanation as to how or why the alleged and unspecified "failure" caused arcing that Mr. Sanderson believes lead to the subject fire;  (3) the report does not discuss the specific defect from which the operating thermostat allegedly suffered; (4) the report does not state whether the defect is one based on the design of the subject dryer and/or operating thermostat or one that resulted during the product's manufacture;  (5) because Mr. Sanderson wrote his report before Plaintiff filed this case, there is no indication that he did anything to evaluate the design and/or manufacture of the thermostat; (6) Mr. Sanderson offers no explanation as to how or why the thermostat operated without problem for more than five years before the incident; and (7) Mr. Sanderson says he "has seen this type of failure of an operating thermostat previously," but he provides no support or explanation for this statement.  Therm-O-Disc complains that without this information, it is unduly prejudiced because it does not know what defect theory Plaintiff is pursuing, and its experts cannot prepare their reports since they have no idea what about the thermostat Plaintiff is alleging was defective.

When Mr. Sanderson prepared his report is irrelevant.  What matters is whether

his report is compliant with Rule 26(a).  The report lists the specific materials and items Mr. Sanderson reviewed, the background information he was given about the fire, and the source of that information.  He describes what he observed when he examined the dryer, he identifies the information he considers important, and he explains why it is important.  He opines that the thermostat manufactured by Therm-O-Disc failed.  That failure occurred inside the body of the thermostat and when it happened, electricity arced to the grounded mounting cup which threw off molten steel.  The molten steel particles ignited lint and/or plastic components in the blower housing and initiated the fire.  (Doc. 50-1).  The information in Mr. Sanderson's report is not incomplete, conclusory, uninformative, unintelligible, or boilerplate.  It is factual and explains how and why he reached his expert opinions.  The report gives Therm-O-Disc ample notice of what Mr. Sanderson will say if he is called as a witness.

     Therm-O-Disc's complaint that Mr. Sanderson has not identified the specific defect in the thermostat, why it failed, and how it caused the arcing go to the weight of the evidence, not the admissibility of the report.  And, Therm-O-Disc's criticisms presuppose that it is possible to make these determinations following the fire, which destroyed the dryer.  Regardless, with the benefit of the Cassisi inference, Plaintiff does not need to supply evidence on these points to establish a prima facie case.  Relying on Cassisi, Plaintiff must prove two essential predicate facts: (1) a malfunction; (2) during normal operation.  See Citizens Prop. Ins. Corp. v. Simkar LLC, 813 F. Supp. 2d 1356, 1363 (M.D. Fla. 2011) (citing Cassisi, 396 So.2d at 1151).  Based on evidence of arcing on the inside of the thermostat, Mr. Sanderson

concluded that the thermostat malfunctioned and that such a malfunction could not occur absent a defect. The Eleventh Circuit has already determined that Cassisi stands for this very premise. Worsham, 734 F.2d at 683 (holding that Cassisi stands "for the proposition that when a product malfunctions that would not malfunction but for the defect, a plaintiff is entitled to an inference of a defect.").

Accordingly, Defendant, Therm-O-Disc's Motion to Strike Certain Portions of the Expert Report and Limit the Testimony of Plaintiff's Expert Jack Sanderson (Doc. 47) is DENIED.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on August 29, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel